UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-23814-WPD

FLY ALL WAYS, N.V.
A foreign Surinamese company,

Plaintiff,

v.

NORTHERN AIR CARGO, LLC,
An Alaskan limited liability company,

Defendant.
_______________________________________/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ON THE GROUNDS OF *FORUM NON CONVENIENS***

This Cause is before the Court on Defendant Northern Air Cargo, LLC ("Defendant" or "NAC")'s April 27, 2026 Motion to Dismiss Plaintiff's Complaint on the Grounds of *Forum Non Conveniens* (the "Motion") [DE 41]. The Court has carefully considered the Motion [DE 41], Plaintiff Fly All Ways, N.V. ("Plaintiff" or "FAW")'s May 18, 2026, Response in Opposition [DE 49], Defendant's June 2, 2026, Reply [DE 57], the exhibits filed in the record, and is otherwise fully advised in the premises.

## I. BACKGROUND

This case involves an aviation accident that occurred at the Johan Adolf Pengel International Airport in Paramaribo, Suriname on May 15, 2024. *See generally* [DE 1] (Complaint). The accident involved a Fokker 70 Aircraft, bearing Suriname registration Mark PZ-TFC ("FAW Aircraft") and a Boeing 767 Cargo Aircraft bearing U.S. Registration No. N379CK ("NAC Aircraft"). [DE 1] at ¶¶ 12–13. The FAW Aircraft was operated by Plaintiff

FAW, a Surinamese company with its place of business in Paramaribo, Suriname, which has a sole member who is a citizen of Suriname with his residence in Paramaribo, Suriname. ¶¶ 1–2. The NAC Aircraft was operated by Defendant NAC, an Alaskan limited liability company, with its principal place of business in Anchorage, Alaska. ¶ 3.

Plaintiff alleges that the NAC Aircraft struck the FAW Aircraft with its tail while the FAW Aircraft was parked at an authorized location at the Johan Adolf Pengel International Airport in Paramaribo, Suriname. ¶¶ 13–14. The FAW Aircraft sustained significant and costly damage from the impact, and as a result Plaintiff FAW lost use of the aircraft for a year and had to lease a replacement aircraft to fulfill its contractual obligations. ¶¶ 15, 20–21.

On August 25, 2025, Plaintiff FAW filed this action against Defendant NAC in the Southern District of Florida, alleging claims for Negligence (Count I) and Gross Negligence (Count II). *See generally* [DE 1]. Defendant NAC now moves to dismiss on the grounds of *forum non conveniens*, arguing that Suriname, where the two airplanes collided, is a more appropriate and convenient forum.

## II. STANDARD OF LAW

A court may decline jurisdiction over a dispute under the doctrine of *forum non conveniens* when "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981). The Eleventh Circuit has found that this "power should not be exercised lightly, however, because it effectively deprives the plaintiff of his favored forum." *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017). The defendant "bears the burden of justifying dismissal based on *forum non*

*conveniens*." *Fresh Results, LLC v. ASF Holland B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019). The defendant must show "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001).

## III. DISCUSSION

Through the instant motion, Defendant NAC requests dismissal of the case on *forum non conveniens* grounds, contending that Suriname would be a more appropriate forum to adjudicate the dispute.

In analyzing a *forum non conveniens* motion, a district court must distinguish between resident or citizen plaintiffs and foreign plaintiffs. *See Piper Aircraft*, 454 U.S. at 255-56. While "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum . . . that the presumption applies with less force when the plaintiff or real parties in interest are foreign." *Id.* at 255. A "plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum because, "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Id.* at 255-56. "[T]his assumption is much less reasonable" when the plaintiff is foreign." *Id.* at 256. "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Id.* Accordingly, here, where Plaintiff is a citizen of Suriname, Plaintiff's preference to litigate this case is Florida is entitled to less deference.

Furthermore, a court must also give less deference to a plaintiff's choice of forum when the incident giving rise to the litigation occurred abroad. "[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985). Here the collision between the two planes did not occur in Plaintiff's chosen forum in Florida or even in the United States at all, but rather in Suriname, where Plaintiff is from.

Based on the foregoing, as Florida is not Plaintiff's home forum (Suriname is), and Florida is not where the incident giving rise to the litigation occurred (Suriname is), the Court gives little deference to Plaintiff's choice of a Florida forum when determining the most convenient forum for this case.

*a. Availability and Adequacy of the Suriname Forum*

In deciding *forum non convenience* the Court looks at the availability and adequacy of the alternative forum as separate considerations. *See Leon*, 251 F.3d at 1311. The alternative forum is available when the defendant is amenable to process in the other jurisdiction and the foreign court can assert jurisdiction of the litigation. *Id.; see also Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011). In this case case, NAC has agreed to accept service and consent to the jurisdiction of the courts of Suriname as a condition of dismissal. Additionally, the Surinamese Government – Adolf Pengel Airport Investigation Commission ("APAIC") has identified other

potential tortfeasors in the subject aircraft collision[1], all of whom are amenable to suit in Suriname and subject to Suriname's jurisdiction.

After having determined that Suriname is an available forum, the Court looks at whether this alternative forum is adequate. A forum is adequate if it "provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009). "Dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Piper Aircraft*, 454 U.S. at 250. "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001). This standard does not require that an alternative forum have identical causes of action or remedies; rather, a forum is inadequate where the remedies offered by another forum are either "clearly unsatisfactory" or amount to "no remedy at all." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 254-55).

Defendant NAC contends that Suriname is an adequate forum because Suriname law provides for remedies for Plaintiff's causes of action for negligence, gross negligence, and property damage claims. Plaintiff FAW disputes Suriname's adequacy because FAW seeks damages that include diminution of value of the FAW Aircraft and consequential damages, but Suriname limits recovery to actual damages and does not allow for consequential damages.

The parties agree that a prevailing plaintiff in a suit in Suriname is entitled to actual damages. *See* [DE's 41, 49]. Suriname law provides for material damages (which includes

---

[1] SurAir Ground Services N.V. ("SurAir"), PBM and Luchthaven Operation, N.V. (Airport Management Ltd.).

actual loss and anticipated loses) and contribution and indemnity. *See* Sohansingh Decl. [DE 41–2] at ¶ 52. Therefore, Court rejects Plaintiff's argument that Suriname is not an adequate forum due to any limitation on recovery of consequential damages, including specifically diminution of value of the FAW aircraft.

Further, Plaintiff argues that the lack of jury trial, the requirement of leave of court for oral depositions, and the fact that most of the testimony and rebuttal in Surinamese trials are limited to writing makes Suriname an inadequate forum. The Court disagrees. "Some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Satz*, 244 F.3d at 1283 (citation omitted). Difference in procedural does not amount to a denial of adequate process. *See Magnin v. Teledyne Cont. Motors*, 91 F3d 1424, 1430 (11th Cir. 1996) (rejecting argument that lack of jury trials warrants FNC dismissal); *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1378 (S.D. Fla. 2013) (recognizing that Eleventh Circuit has held that lack of jury trial does not merit substantial weight in the FNC analysis). If courts accepted the argument that the lack of jury trials renders a forum inadequate, then *forum non conveniens* dismissal would not be appropriate any time the alternate forum was a civil law jurisdiction. *Magnin*, 91 F3d at 1430.

Plaintiff also argues that if it brings its claims against Defendant in Suriname, it will not be able to recover any judgment in Plaintiff's favor entered by a Suriname court because Defendant's assets are in the United States and the United States has no treaty with Suriname to provide for recovery. However, the lack of a bilateral enforcement treaty with Suriname is not determinative of whether the alternate forum is adequate. The United Sates does not currently maintain a treaty with any foreign nation regarding the reciprocal recognition and enforcement of money judgments. *See* Sohansingh Reply Decl. [DE 57–1] at ¶ 9; *see also Fresh Results*, 921

F.3d at 1052 (finding that the United States had no bilateral or multilateral treaty between the United States and any foreign country for the recognition and enforcement of foreign judgments and the district court had erred on relying solely on the absence of a treaty to weigh this factor in favor of dismissal). As Defendant points out, courts in the United States routinely recognize foreign judgments under traditional principles of international comity. *See, e.g., In re Neves*, 783 F. App'x 995, 996 (11th Cir. 2019) (recognizing comity in the context of a cross-border bankruptcy proceeding and affirming district court's deference to an Italian court order).

Plaintiff also posits that it would not be able to recover a judgment in Plaintiff's favor entered by a Suriname court because Florida state law governing the recognition of foreign judgments under the Uniform Foreign Money-Judgments Recognition Act does not recognize money judgments obtained in Suriname because Suriname does not recognize money judgments obtained in the United States. Plaintiff cites favorably to *See Nicor Int'l Corp. v. El Paso Corp.*, 318 F. Supp. 2d 1160 (S.D. Fla. 2004) (finding a judgment in the Dominican Republic based on a defendant's waiver of arbitration unenforceable because it violated Florida public policy favoring arbitration), which is largely inapposite as the issue there was the court's refusal to enforce a foreign judgment that was against Florida public policy. Plaintiff relies on Fla. Stat. § 55.605(g), which provides that an out-of-country foreign judgment need not be recognized if "the foreign jurisdiction where judgment was rendered would not give recognition to a similar judgment rendered in this state." Defendant responds that Fla. Stat. § 55.605(g) does not render a Suriname judgment nonrecognizable in Florida[2] because Suriname in fact recognizes money

[2] Furthermore, there is no indication that Plaintiff would be limited to enforcing a Suriname judgement in Florida. In the event Plaintiff were to attempt enforce a Suriname judgment against Defendant NAC in Alaska (NAC's place of incorporation), Alaska law does not list possible nonrecognition of a U.S. judgment by the foreign court as a ground for nonrecognition of a foreign judgment. *See* Alaska Stat. § 09.30.120 (b) (2026).

judgment obtained in the United States. *See* Sohansingh Reply Decl. [DE 57–1] at ¶¶ 11–12 (stating that Suriname courts may enforce foreign judgments under Article 431, paragraph 2 of the Surinamese Code of Civil Procedure, which provides that foreign judgments may be enforced in Suriname if the proceedings are heard and disposed of anew by a Surinamese court. A U.S. judgment creditor is fully permitted to initiate new proceedings (*actio judicati*) using the foreign judgment as persuasive, binding evidence. Surinamese courts do not re-litigate the substantive merits if the U.S. court observed due process, held jurisdiction, and the judgment does not violate Surinamese public policy (*openbare orde*). The Unites States ruling is effectively adopted into a local enforceable title.).

Moreover, although, enforceability of the judgment is one of the many factors the Court considers when deciding whether to dismiss based on *forum non conveniens*, courts routinely grant dismissal over objections that a judgment would not be enforceable in the United States.[3] *See, e.g.*, *Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co.*, 896 F. Supp. 1197 (M.D. Fla. 1995) (Costa Rica was an adequate alternative forum despite concerns about enforceability of a judgment and discovery being less extensive than the U.S.). Further, in any event, Defendant NAC has agreed to be bound by and satisfy a final judgment rendered in Suriname following any appropriate appeal.

---

[3] Other district courts have found Suriname to be an adequate forum. *See Sahebdin v. Khelawan*, 2022 WL 4451005, at *11 (E.D.N.Y., 2022) ("The Court declines to extend its jurisdiction to any fraud claims related to the debts Plaintiff allegedly incurred in Suriname based on Defendants' conduct because at the time Plaintiff was a Suriname resident . . . , the documents were executed in Suriname, the bulk of the witnesses and evidence that Defendants would need to defend the action are located in Suriname, the action would be governed by Suriname law, and the fraud otherwise has no substantial connection to New York.")

Based on the record and the applicable law, the Court finds the proposed alternative forum of Suriname is an available and adequate forum. The Court now turns to the private interest factors and public interest factors.

*b. Private Interest Factors*

In deciding whether the Court should refuse to exercise jurisdiction over a dispute despite the plaintiff's choice of forum, the Court must weigh several private and public interest factors to determine whether those factors support or oppose dismissal. The private-interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, (1947)).[4]

Access to evidence is "perhaps the most important private interest." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2002). In the current case, the sources of proof will likely come the NAC Aircraft's crew, the ground marshallers, the APAIC investigation, and documents after the accident detailing the repair of the aircrafts, incident reports, and pictures of the incident and

[4] Plaintiff also contends that because Defendant NAC filed a Third-Party Complaint against Laparkan, Airways Inc. regarding its contractual obligations to NAC this case should not be dismissed based on *forum non conveniens*. Defendant NAC responds that its third-party claims against Laparkan for contractual defense and indemnity arise out of Laparkan's contractual obligations to NAC and thus are wholly separate from FAW's claims of negligence and gross negligence against NAC and are not impacted by the merits and any findings of liability in the underlying action brought by Plaintiff against NAC. The Court agrees with Defendant NAC. When "third-party claims are different from the plaintiff's claims and would not require duplication of proof or risk inconsistent judgments, such a factor should not play a heavy role in a [FNC] dismissal." *Pimentel v. Robinson Helicopter Co., Inc.*, 2008 WL 11333593, at *4 (S.D. Fla. Oct. 7, 2008).

area[5]. The NAC crew and the repaired NAC Aircraft are the only sources of evidence currently present in the United States; all of the remaining evidence is in Suriname and would have to be transported to the United States. Therefore, this factor heavily supports dismissal in favor of Suriname. *See, e.g.*, *Nygard v. DiPaolo*, 2017 WL 4303825, at *7 (S.D. Fla. 2017) ("Because the vast majority of evidence is located in the Bahamas or, at the very least, well outside of Florida, access to evidence weighs heavily in favor of dismissing this case on grounds of forum non conveniens."). Defendant identifies the following as sources of evidence located in Suriname that would be key to determining liability:

- All liability-related documents related to the Accident (e.g., FAW, SurAir, Luchthaven Operations, N.V. (Airport Management Ltd.), and PBM records, maintenance reports, witness statements, maintenance records and cabin defect logs, training/procedure manuals and handbooks).

- The Incident was investigated by the Surinamese Government: the Suriname Attorney General – Adolf Pengel Airport Investigation Commission in Suriname.

- All incident and accident reports including but not limited to the APAIC Report.

- The PBM Airport where the Incident occurred which according to the APAIC Report had inadequate parking spaces that did not eliminate the risk of collision between parked and moving aircraft.

- The FAW Aircraft.

---

[5] Because photographs from the accident are included in the APAIC report, the ability to view the premises is less important because a court sitting anywhere would be able to see the images of the accident. However, to the extent it would be helpful to a trier of fact, this also weighs towards dismissal. *See, e.g.*, *La Fontaine v. Signature Rsch., Inc.*, 2016 WL 880527, at *7 (S.D. Fla. Mar. 8, 2016) (ability of the jury to view the accident scene supported dismissal where the accident occurred abroad and a site visit might be necessary). In Florida, visual inspection of the NAC Aircraft is possible as it was transported to the United Sates, however, the FAW Aircraft and the airport are both located in Suriname. Under article 175 of the Surinamese Code of Civil Procedure the judge is allowed to conduct a judicial site visit (*Descente*) to inspect the airport facilities and /or aircraft wreckage, which the parties might want to present as evidence. *See* Sohansingh Decl. [DE 41–2] at ¶ 69.

- All damages-related documents for the damage sustained to the FAW Aircraft.
- Personnel, employment, and training records for the FAW crew and ground staff including FAW ground marshallers, SurAir, Luchthaven Operations, N.V (Airport Management Ltd.), and PBM.
- FAW, SurAir, Luchthaven Operations, N.V (Airport Management Ltd.), and PBM corporate documents and records.

Based on the foregoing, the private interest factor of relative ease of access to sources of proof weighs strongly in favor of dismissal.

The next private interest factors the Court considers are the availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining attendance of willing witnesses. These factors both weigh in favor of dismissal. If this litigation proceeds in Florida, several witnesses would have to fly in and be lodged for deposition/trial testimony or the production of evidence. Additionally, the United States district courts do not have the subpoena power over the many witnesses in this case who are foreign national located outside of the United States. *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993); *see also Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1324 (S.D. Fla. 2006) (parties would be "severely handicapped" if forced to litigate in the Southern District of Florida where important third party witnesses and documents were located in Brazil, outside of the court's subpoena power). Meanwhile in Suriname, under Article 98 of the Code of Civil Procedure, the court where the "unlawful act" occurred has jurisdiction over all the parties involved in the Incident. *See* Sohansingh Decl. [DE 41–2] at ¶ 40. There are a few witnesses that are available in the United Sates, the NAC crew, and thus subject to the Court's subpoena power. That said, NAC has stipulated in its motion that it would be willing to transport both the crew and the aircraft to Suriname and that there are procedures available in Suriname to obtain their testimony.

As a final private factor, the Court must consider all other practical problems that make the trial of a case easy, expeditious, and inexpensive. These factors again weigh in favor of dismissal. Almost all witnesses in this case are in Suriname and speak Dutch; they will need translators for depositions and giving testimony in court if needed. The witnesses will also need to apply and be approved for visas to travel to the United Sates, which might delay the judicial process. Documents regarding the training of the ground marshallers, incident reports, and other relevant information will likely be in Dutch and need translation into English. *See, e.g.*, *Trujillo v. Banco Cent. Del Ecuador*, 35 F. Supp. 2d 908, 914–15 (S.D. Fla. 1998) (finding *forum non conveniens* dismissal appropriate in part because many witnesses were located abroad and because of difficulties associated with translating voluminous testimony and documents from Spanish to English); *Inverpan v. Britten*, 646 F. Supp. 2d 1354 (S.D. Fla. 2009) (finding that dismissal on *forum non conveniens* grounds was appropriate in part because many of the witnesses did not speak English and translation would be cumbersome).

*c. Public Interest Factors*

The Court next considers the public interest factors, which are:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n. 6 (internal citation omitted).

Although the Court affords little weight to administrative difficulties arising from any inconveniences arising from keeping this case, the Court notes that the Southern District of Florida is consistently one of the busiest districts in the nation. *See Beaman v. Maco Caribe, Inc.*,

790 F. Supp. 2d 1371, 1379 (S.D. Fla. 2011). The alternative forum will likely not pose administrative difficulties associated with court congestion; actions filed in Suriname are decided in average within eighteen to twenty-four months from filing. *See* Sohansingh Decl. [DE 41–2] at ¶ 25.

The factor of unfairness of imposing jury duty on a community in Florida without relation to the litigation weighs in favor of dismissal. The events that gave rise to this litigation all occurred in Suriname, FAW is a Surinamese company, and the NAC, United States defendant, is an Alaska corporation.[6] Suriname also has a significantly greater local interest in resolving the dispute: the accident happened in its airport, it investigated the events, the Plaintiff is a Suriname corporation, and all the nonparty witnesses and other parties involved are Surinamese. *See, e.g.*, *Kyla Shipping Co.*, 2012 WL 1565634, at *7 (Brazil had substantial interest in resolving property damage claims after two vessels collided in the forum); *Perez-Lang v. Corporacion de Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1352 (S.D. Fla. 2008) (FNC dismissal appropriate in part because the "dispute is clearly a Dominican Republic controversy because the accident occurred in that forum" and that the Dominican Republic had "a substantial interest in resolving the issues presented by the instant action").

Although no factor is individually dispositive, the need to untangle foreign law also weighs in favor of dismissal. *See Gilbert*, 330 U.S. 509 ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern

---

[6] As Plaintiff correctly notes, Laparkan, who NAC has impleaded as a third-party defendant in this case, is a Florida corporation headquartered in Miami who was responsible for handling operations in Suriname for NAC. However, as Laparkan's duties were related to the action in Suriname, it doesn't establish a significant enough relation between the litigation and the Florida community.

the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). NAC argues that because the subject aircraft collision occurred at an airport in Suriname, Suriname law will likely apply to Plaintiff's claims in this action, favoring dismissal. *See, e.g., Goldstein v. Hard Rock Cafe Int'l (USA), Inc.*, 519 F. App'x 653, 655 (11th Cir. 2013) (Dominican law would probably apply in slip and fall case at resort in Dominican Republic). Plaintiff does not address this argument in its Response, effectively conceding it.[7] Moreover, the Court agrees with Defendant that under Florida's choice of law rules, Suriname law would apply to this action.[8] Therefore, if this action was tried in Florida, a federal district court in Florida would have to divine, interpret, and apply Suriname law for claims of negligence and gross negligence standards. Suriname is much better suited to apply its own law, and therefore this factor also supports dismissal of the suit.

---

[7] Defendant argues that as the Plaintiff does not contest that the public interest factors and majority of the private interest factors point in favor of FNC dismissal and therefore conceded these issues. *See generally Brady v. Medtronic, Inc.*, 2014 WL 1377830, at *6 (S.D. Fla. Apr. 8, 2014) (conceding claims were subject to dismissal by failing to address defendant's argument in plaintiff's opposition to the motion to dismiss). Generally, courts find that when a defendant doesn't not contest and argument in its Response brief and the argument is conceded. *See, e.g., Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (agreeing with the district court's conclusion that "when a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned").

[8] Florida employs the "significant relationships test" which determines the rights and liabilities of the parties in torts cases. *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980). Some of the contacts that are taken into account to determine the law applicable to an issue include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* Here the place where the injury occurred and the place where the conduct causing the injury occurred are the factors that are more likely to be relevant in the current case; here the conduct and the injury caused both occurred in Suriname and Suriname law would likely apply.

*d. Reinstatement*

The last consideration to analyze a motion to dismiss grounded on *forum non conveniens* is a plaintiff's ability to reinstate the suit in the alternative forum without undue burden. *See Leon*, 251 F.3d at 1310–11. Plaintiff's claims will not be time-barred under Suriname law until May 14, 2029, under Article 3:310 of the Civil Code (setting a five-year limitation period for claims for damages incurred from an "unlawful act") *See* Sohansingh Decl. [DE 41–2] at ¶ 47. Further, Defendant NAC has stipulated that it will submit to the Surinamese court's jurisdiction. Therefore, the Court dismisses this action subject to Defendant's representations.

## IV. CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant NAC's Motion to Dismiss Plaintiff's Complaint on the Grounds of *Forum Non Conveniens* [DE 41] is **GRANTED**;
2. This case is hereby **DISMISSED** based on *Forum Non Conveniens;*
3. The Clerk shall **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of June, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record